UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED

MAR 1 6 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | |
|---|---|
| PHILIP M. WASELESKI<br>24 SEMINARY STREET, UNIT 195<br>BEREA, OHIO 44017<br><br>    Plaintiff.<br><br>    -vs-<br><br>CITY OF BROOKLYN<br>C/O MAYOR, RON VAN KIRK; AS AN<br>INDIVIDUAL, AND IN HIS OFFICIAL<br>CAPACITY AS MAYOR FOR THE<br>CITY OF BROOKLYN, OHIO;<br><br>-and-<br><br>SCOTT MIELKE, (#2201), AS AN<br>INDIVIDUAL, AND IN HIS<br>OFFICIAL CAPACITY AS CHIEF<br>OF POLICE FOR THE CITY OF<br>BROOKLYN, OHIO;<br><br>-and-<br><br>TONY AFTIM, (#2260), AS AN<br>INDIVIDUAL, AND IN HIS<br>OFFICIAL CAPACITY AS A<br>POLICE OFFICER FOR THE CITY<br>OF BROOKLYN, OHIO;<br><br>-and- | CIVIL NO: 1 : 23 C V 0548<br><br>_____<br><br>JUDGE: **JUDGE FLEMING**<br>_____<br>**MAG JUDGE GRIMES**<br><br>COMPLAINT FOR VIOLATION OF<br>CIVIL RIGHTS (42 U.S.C. § 1983)<br><br>For Monetary and Injunctive Relief<br><br>JURY DEMAND |

*PHILIP M. WASELESKI COMPLAINT – PAGE 1*

KYLE PITTS (#2264), AS AN          )
INDIVIDUAL,     AND     IN     HIS )
OFFICIAL    CAPACITY    AS    A    )
POLICE OFFICER FOR THE CITY        )
OF BROOKLYN, OHIO;                 )
                                   )
-and-                              )
                                   )
MIKE SPISAK, (#2267), AS AN        )
INDIVIDUAL,     AND     IN     HIS )
OFFICIAL    CAPACITY    AS    A    )
POLICE OFFICER FOR THE CITY        )
OF BROOKLYN, OHIO;                 )
                                   )
-and-                              )
                                   )
JAMES J. MCDONNELL (5802), AS      )
AN INDIVIDUAL, AND IN HIS          )
OFFICIAL    CAPACITY    AS    A
PROSECUTOR FOR THE CITY OF
BROOKLYN, OHIO;

JANE    AND    JOHN    DOES    1
THROUGH 10, INCLUSIVE;

     Defendants,

Now comes the PLAINTIFF, PHILIP M. WASELESKI (hereinafter referred to as "Plaintiff" or "WASELESKI"), appearing Pro se, and avers as follows on the basis of his knowledge, information, and belief:

## INTRODUCTION

1.      This case involves violations of the PLAINTIFF's civil rights under 42 U.S.C. § 1983 and pendent state law claims against the City of Brooklyn and a police officer employed by the city for violations of the constitutional rights of the PLAINTIFF resulting from a warrantless and baseless arrest.

## PARTIES

2.      The PLAINTIFF is a natural person who resides at 24 Seminary Street, Unit 195, Berea, Ohio 44017.

3.      The DEFENDANT, CITY OF BROOKLYN, now and at all times mentioned is a duly incorporated city of the State of Ohio, located in Cuyahoga County, and within the jurisdiction of this Court. The City of Brooklyn is a "person" pursuant to 42 U.S.C. § 1983.

4.      The DEFENDANT, SCOTT MIELKE (hereinafter referred to as "MIELKE:"), now and at all times mentioned was an employee of the City of Brooklyn Police Department, serving as the Chief of Police, and is named in both his individual and official capacities.

5.      The Defendant, Patrolman TONY AFTIM, (hereinafter referred to as "AFTIM:"), now and at all times mentioned was an employee of the City of Brooklyn Police Department, serving as a law enforcement officer, and is named in both his individual and official capacities.

6.      The Defendant, Patrolman KYLE PITTS, (hereinafter referred to as "PITTS:"), now and at all times mentioned was an employee of the City of Brooklyn Police Department, serving as a law enforcement officer, and is named in both his individual and official capacities.

7.    The Defendant, Patrolman MIKE SPISAK, (hereinafter referred to as "SPISAK:"), now and at all times mentioned was an employee of the City of Brooklyn Police Department, serving as a law enforcement officer, and is named in both his individual and official capacities.

8.    The Defendant, JAMES J. MCDONNELL (hereinafter "MCDONNELL"), is named in both his individual, and official capacities as the prosecutor for the city of Brooklyn, Ohio.

9.    Unknown Defendant(s) Jane and John Doe(s) are persons or entities who at this time are unknown and may have participated in the violation of PLAINTIFF's civil and constitutional rights, and are named in both their individual and official capacities. At such time as the name and addresses of said unknown persons are discovered, the PLAINTIFF will move to amend this Complaint.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

11.    PLAINTIFF seeks relief under the Fourth and Fourteenth Amendments of the United States Constitution, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, including compensatory damages, punitive damages, costs, and attorney fees, pursuant to 42 U.S.C. §1988.

12.    WASELESKI's state law claims are related to these federal claims and form a part of the same case or controversy. The Court accordingly has supplemental jurisdiction over WASELESKI's state law claims, pursuant to 28 U.S.C. § 1367(a).

13.    The acts and omissions giving rise to PLAINTIFF'S claims occurred in the city of Brooklyn, Ohio and therefore, pursuant to 28 U.S.C. § 1391, the

appropriate venue for this action is the United States District Court for the Northern District of Ohio, Eastern Division.

14. All conditions precedent to the maintenance of this action, have been performed, have occurred prior to its institution, or have been waived.

## FACTUAL ALLEGATIONS

15. On January 3, 2021, WASELESKI was followed out of a business parking lot by officer AFTIM, of the Brooklyn Police Department.

16. He was then stopped going into the Sheetz Gas station located at: 10315 Cascade Crossing, Brooklyn, Ohio 44144.

17. There was no legal justification and/or probable cause as to why AFTIM was following the PLAINTIFF, as he was going about his business on the public highways.

18. AFTIM approached WASELESKI's driver side window and stated he was inquiring about his well-being.

19. AFTIM told WASELESKI to get out of the vehicle so he complied peacefully.

20. WASELESKI was not impaired, nor under the influence of any substance.

21. AFTIM began to unlawfully search and seize WASELESKI's personal belongings without a search warrant, nor with any probable cause.

22. WASELESKI complied with Officer AFTIM's orders, and was compliant and answered all of AFTIM's questions.

23. AFTIM discovered a small brown bottle of oil which he declared was PCP without any justification, nor proof of the matter (no odor, or other description of illegal drugs).

24. WASELESKI informed him that it was not any illegal drugs, and that this bottle was his personal belonging.

25.     AFTIM then illegally, and unreasonably, searched and seized WASELESKI's personal property (cell phone, wallet, automobiles keys, his PPE wear), and then placed him in the back of his police cruiser wherein he then locked the doors in an illegal detainment of WASELESKI - constructively a false arrest.

26.     AFTIM's conduct was unreasonable, and was without any prior suspicion or information nor tip to prove WASELESKI of any wrong doing which would prompt any additional investigation of him. Even mere suspicion is not probable cause nor is it  nearly enough to go on a fishing expedition to violate citizens' rights.

27.     AFTIM's lines of questioning with WASELESKI were highly inappropriate, intimidating, harassing, and a clear violation of his Constitutional rights under Ohio laws.

28.     Therefore, this civil rights action seeks explementary damages for the infliction of emotional distress upon the PLAINTIFF by violating various rights under the United States Constitution, and state law, in connection with the incident that took place on January 3, 2021.

29.     AFTIM approached the PLAINTIFF with an attitude of bias, and discriminatory motivation.

30.     He treated WASELESKI differently than anyone else because he was wearing a PPE mask, and because he is a non-conforming male and not heterosexual.

31.     His actions were unreasonable, and he acted outside to the scoop of his employment. The climate of the Brooklyn Police department has become politicized by recent events, and this can be evidenced by the ubiquitous use of the divisive and controversial blue line flag magnet in which can be seen on the back of police cruisers, police websites, and at police stations and officer's grab.

32. AFTIM's escalation inflicted intentional emotional distress upon the PLAINTIFF by using excessive force, and he abused his power to target citizens without any probable cause, and in reliance upon qualified immunity as a shield of protection from liability.

33. Brooklyn Police Department displays a controversial blue flag placed on the back of its police vehicles which appears to promote division. While many other cities in Cuyahoga County, and all over the country in fact, have removed this flag from their local police station due to the political unrest, and the controversy it causes among other protected class citizens, this department has not done so. This flag was used in Charlottesville, Virginia, where protesters carried along with the Confederate flag in 2017.

34. WASELESKI shortly after this incident placed a complaint with the City of Brooklyn to the Police Department with a Citizen's Complaint form against AFTIM.

35. On June 14, 2021 WASELESKI filed a formal complaint and a certified letter to the U.S. Department of Justice, The Civil Rights Division, and received an acknowledgment and email from the Civil Rights Division Report #79515-GRJ stating it is currently under investigation.

36. AFTIM in 2017 began his employment with the City of Brooklyn where he had annual salary of $87,697 according to public records. This salary is 154 percent higher than average, and 970 percent higher than median salary in City of Brooklyn.

37. WASELESKI is now questioning whether AFTIM's traffic stop was legal and alternate discriminatory motives towards WASELESKI's protected class.

38. WASELESKI also reported this incident to his local FBI office. He also filed a grievance against MCDONNELL with The Office of Disciplinary Counsel, and with the American Bar Association Grievance Committee.

41.     Because the PLAINTIFF had not actually committed any criminal offense at the time he was seized, searched, and arrested, these patrolmen lacked probable cause to seize, search, or arrest the PLAINTIFF.

42.     The City of Brooklyn is liable for the actions of these patrolmen, as the City was aware that these patrolmen did not understand what constitutes probable cause for arrest because of the many previous lawsuits which have been filed against the City of Brooklyn for these exact types of acts.

43.     Therefore, they failed to adequately train their patrolmen in what constitutes sufficient evidence to justify an arrest.

44.     Because of these other previously filed lawsuits for the same causes of action as this one, The City of Brooklyn should have been aware that their patrolmen were likely to violate, and continue to violate, the constitutional rights of individuals as a result of its training, supervision, and retention policy.

45.     On or about January 3, 2021, WASELESKI was driving his automobile, while dressed as a non-gender conforming male in non-gender clothing. Specifically, WASELESKI was wearing a PPE mask and perceived as part of the LGBTQ community.

## FIRST CAUSE OF ACTION
### A VIOLATION OF PLAINTIFF'S
### FOURTH AMENDMENT RIGHTS THROUGH 42 U.S.C. § 1983 63
### For Unlawful Search

46.     PLAINTIFF hereby realleges the allegations contained in the above paragraphs, as if fully set forth herein.

47.     These officers violated PLAINTIFF's Fourth Amendment right against unlawful search when, through threat of force and actual display of authority, they searched PLAINTIFF's person without probable cause.

48.     These patrolmen are personally liable and ineligible for qualified immunity as their conduct violated PLAINTIFF's constitutional rights, and his rights were clearly established at the time of the violation.

49.     The City of Brooklyn is liable for failing to properly train and supervise these patrolmen, and for retaining them, with such failures amounting to deliberate indifference.

50.     The unlawful search of his person in front of other citizens caused PLAINTIFF emotional trauma and humiliation.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 - FOURTH AND FOURTEENTH**
**AMENDMENT VIOLATIONS**
**For Unlawful Seizure**
***WASELESKI v. AFTIM and MCDONNELL***

51.     WASELESKI realleges the allegations contained in the above paragraphs, as if fully set forth herein.

52.     Section 1983 provides, in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

53.     To assert a claim under section 1983, PLAINTIFF must show (1) he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

54.     These patrolmen violated PLAINTIFF's Fourth Amendment right against unlawful seizure when, through threat of force and actual display of authority, they detained and arrested PLAINTIFF without probable cause.

55.     The patrolmen are personally liable and ineligible for qualified immunity as his conduct violated the PLAINTIFF's constitutional rights, and PLAINTIFF's rights were clearly established at the time of the violation. 7

56.     The City of Brooklyn is liable for failing to properly train and supervise these patrolmen, and for retaining the DEFENDANTS, with such failures amounting to deliberate indifference.

57.     As a result of PLAINTIFF's unlawful arrest of the PLAINTIFF, he suffered loss of income, emotional distress and humiliation, and suffered harm to his reputation.

58.     The complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that violation. *Doe v. Claiborne County, Tenn. by and through Claiborne County Bd. of Educ.,* 103 F.3d 495, 507-508 (6th Cir. 1996)

59.     The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." See *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396.

60.     Once a defendant asserts the defense, the PLAINTIFF must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." See *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396.

61.     Implicit in the Fourth Amendment's protection from unreasonable searches and seizures is its recognition of individual freedom. That safeguard has been declared to be "as of the very essence of constitutional liberty" the guaranty of which "is as important and as imperative as are the guaranties of the other

fundamental rights of the individual citizen . . . ." *Gouled v. United States*, <u>255 U.S. 298, 304</u> (1921); cf. *Powell v. Alabama*, <u>287 U.S. 45, 65-68</u> (1932).

62.     While the language of the Amendment is "general," it "forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent, and unquestionably extends to the premises where the search was made . . . ." *Go-Bart Importing Co. v. United States*, <u>282 U.S. 344, 357</u> (1931).

63.     Mr. Justice Butler there stated for the Court that "[t]he Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted." <u>Ibid.</u> He also recognized that "[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." Ibid.; see *United States v. Rabinowitz*, <u>339 U.S. 56, 63</u> (1950); *Rios v. United States*, <u>364 U.S. 253, 255</u> (1960).

64.     The conduct by the officers identified in this count and described herein violated WASELESKI's Fourth Amendment rights and Fourteenth Amendment rights. WASELESKI was denied Due Process.

65.     As a further direct and proximate result of the conduct by the officers identified in this count, WASELESKI suffered loss of his liberty and freedom and mental anguish.

66.     These losses are either permanent or continuing, and WASELESKI will suffer the losses in the future, in violation of his civil rights. WASELESKI has also agreed to pay the undersigned a reasonable attorney fee for services provided. As a result of Defendant's violations of Ohio and Federal law, PLAINTIFF has been damaged in an amount to be more fully developed during the course of discovery and at trial.

///

## THIRD CAUSE OF ACTION
## MUNICIPAL LIABILITY FOR
## UNCONSTITUTIONAL CUSTOM OR POLICY (42 U.S.C. § 1983)
### *WASELESKI v. CITY OF BROOKLYN*

67.    WASELESKI realleges the allegations contained in the above paragraphs, as if fully set forth herein.

68.    A prima facie case under § 1983 has two elements: "(1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the PLAINTIFF of rights secured by federal law." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

69.    To succeed on a § 1983 claim against a local government, the PLAINTIFF must also prove that the injury about which he complains was caused by an unconstitutional government policy or custom. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").

70.    ("While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." (alteration in original) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))).

71.    On and for some time prior to January 3, 2021 (and continuing to the present date) Defendant, The City, deprived PLAINTIFF of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that said DEFENDANTS, and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general by knowingly maintaining, enforcing and applying an official recognized

custom, policy, and practice of allowing stops and seizures of non-gender conforming males and or females, who based on information and belief are stopped and seized and harassed for no lawful reason and solely based upon their physical appearance, as being non-gender conforming.

72. The policies, practices, and customs implemented and maintained and still tolerated by DEFENDANTS, The City allow for law enforcement officers to stop and harass people who appear to be gender non-conforming.

73. While there may not be a written policy, regarding this, there has for years been a practice and custom of law enforcement stopping and harassing people who appear to be gender non-conforming.

74. It's a further direct and proximate result of the conduct of DEFENDANTS and the City, that WASELESKI suffered loss of his liberty and freedom and mental anguish. These losses are either permanent or continuing, and WASELESKI will suffer the losses in the future, in violation of his civil rights. WASELESKI has also agreed to pay the undersigned a reasonable attorney fee for services provided.

75. As a result of DEFENDANTS' violations of Ohio and Federal law, PLAINTIFF has been damaged in an amount to be more fully developed during the course of discovery and at trial.

## FOURTH CAUSE OF ACTION
## MUNICIPAL LIABILITY FOR FAILURE TO TRAIN (42 U.S.C. § 1983)
### *WASELESKI V. CITY OF BROOKLYN*

76. PLAINTIFF realleges the allegations contained in the above paragraphs, as if fully set forth herein.

77. A Monell claim may also be premised on a municipality's failure to train, supervise, and discipline. To plead such a claim, a PLAINTIFF "must demonstrate

that a city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, 800 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)).

78. For claims involving police officers, the alleged failure can only serve as a basis for § 1983 liability where it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. (quoting *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)).

79. Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Id. at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)).

80. The training policies of the DEFENDANTS, the City and its police department, the BPD were not adequate to train its police officers, including but not limited to, these DEFENDANTS, with regards to unreasonable searches and seizures.

81. As a result, the City police officers, are not able to handle the usual and recurring situations with which they must deal, including making contact with non-gender conforming individuals going about their day to day activities. These inadequate training policies existed prior to the date of this incident and continue to this day.

82. This failure of the City showed an intentional, reckless, and callous disregard for the rights of non-gender conforming individuals such as the PLAINTIFF and this was willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

83.    As a further direct and proximate result of the conduct of DEFENDANTS, the City, PLAINTIFF suffered loss of his liberty and freedom and mental anguish.

84.    These losses are either permanent or continuing, and PLAINTIFF will suffer the losses in the future, in violation of his civil rights.

85.    PLAINTIFF has also agreed to pay the undersigned a reasonable attorney fee for services provided.

86.    As a result of DEFENDANTS' violations of Ohio and Federal law, PLAINTIFF has been damaged in an amount to be more fully developed during the course of discovery and at trial.

### FIFTH CAUSE OF ACTION
### NEGLIGENT HIRING, TRAINING, AND SUPERVISION
### (Ohio Common Law)
### *WASELESKI V. CITY OF BROOKLYN, MIELKE, AFTIM, PITTS, SPISAK, AND MCDONNELL*

87.    PLAINTIFF realleges the allegations contained in the above paragraphs, as if fully set forth herein.

88.    It is fundamental that in order to establish a cause of action for negligence, the PLAINTIFF must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting there from.

89.    A claim for negligent hiring, supervision, and / or retention pursuant to Ohio Common law requires proof of the following: " ' "(1) [t]he existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the PLAINTIFF's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of PLAINTIFF's injuries." ' " (Brackets sic.) 2018-Ohio-3031 at ¶ 26, quoting *Jones v. MTD Consumer*

*Group*, Inc., 2015-Ohio-1878, 32 N.E.3d 1030, ¶ 44 (9th Dist.), quoting *Zanni v.*
*Steltzer*, 174 Ohio App.3d 84, 2007-Ohio6215, 880 N.E.2d 967, ¶ 8 (9th Dist.)

90.     The actions of the DEFENDANTS were negligent, including, but not limited
to the failure to properly and adequately train employees to handle the usual and
recurring situations with which they must deal, including making contact with non-
gender conforming individuals going about their day-to-day activities. These
inadequate training policies existed prior to the date of this incident and continue to
this day.

91.     As a further direct and proximate result of the conduct of DEFENDANTS,
PLAINTIFF suffered loss of his liberty and freedom and mental anguish. These
losses are either permanent or continuing, and PLAINTIFF will suffer the losses in
the future, in violation of his civil rights. PLAINTIFF has also agreed to pay the
undersigned a reasonable attorney fee for services provided.

92.     As a result of DEFENDANTS' violations of Ohio and Federal law,
PLAINTIFF has been damaged in an amount to be more fully developed during the
course of discovery and at trial.

**SIXTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Ohio Common Law)**
***WASELESKI V. CITY OF BROOKLYN, AFTIM, PITTS, SPISAK, AND***
***MCDONNELL***

93.     PLAINTIFF realleges the allegations contained in the above paragraphs, as
if fully set forth herein.

94.     It is fundamental that in order to establish a cause of action for emotional
distress, the PLAINTIFF must show (1) that the defendant intended to cause the
PLAINTIFF serious emotional distress, (2) that the defendant's conduct was
extreme and outrageous, and (3) that the defendant's conduct was the proximate
cause of PLAINTIFF's serious emotional distress. *High v. Howard*, 64 Ohio St.3d

82, 86, 592 N.E.2d 818 (1992), overruled on other grounds in *Gallimore v. Children's Hosp. Med. Cent.,* 67 Ohio St.3d 244, 255, 617 N.E.2d 1052 (1993); *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983), paragraphs three and four of the syllabus; *Walker v. Firelands Community. Hosp.*, 170 Ohio App.3d 785, 2007-Ohio-871, 869 N.E.2d 66, ¶ 59 (6th Dist.).

95.    The actions of the DEFENDANTS were intended to cause the PLAINTIFF serious emotional distress, the DEFENDANTS' conduct was extreme and outrageous, and as a further direct and proximate result of the conduct of DEFENDANTS, PLAINTIFF suffered loss of his liberty and freedom and mental anguish. These losses are either permanent or continuing, and PLAINTIFF will suffer the losses in the future, in violation of his civil rights. PLAINTIFF has also agreed to pay the undersigned a reasonable attorney fee for services provided.

96.    WASELESKI is currently under a healthcare provider and is seeking treatment for PTSD, emotional distress, and major depression.

97.    As a result of DEFENDANTS' violations of Ohio and Federal law, PLAINTIFF has been damaged in an amount to be more fully developed during the course of discovery and at trial.

### SEVENTH CAUSE OF ACTION
### FOR MALICIOUS PROSECUTION, A VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS THROUGH 42 Section 1983.78

98.    PLAINTIFF realleges the allegations contained in the above paragraphs, as if fully set forth herein.

99.    DEFENDANTS violated PLAINTIFF's Fourth Amendment right against unlawful seizure when he influenced and participated in the prosecution of PLAINTIFF in Brooklyn Mayor's Court, and the Cuyahoga County Court of Common Pleas grand jury without probable cause.

100.   As a consequence of the prosecution, PLAINTIFF was forced to post bail and to endure the humiliation and the public spectacle of a criminal prosecution.

101.   The prosecutor is personally liable and ineligible for qualified immunity as his conduct violated PLAINTIFF's constitutional rights, and his rights were clearly established at the time of the violation.

102.   The City of Brooklyn is liable for failing to properly train and supervise these patrolmen/DEFENDANTS, and for retaining this prosecutor, with such failures amounting to deliberate indifference.

103.   As a result of the DEFENDANTS' malicious institution and support of the criminal cases against the PLAINTIFF, he has suffered loss of income, emotional distress, humiliation, and legal expenses, and suffered harm to his reputation.

## EIGHTH CAUSE OF ACTION
## FOR FALSE IMPRISONMENT UNDER OHIO LAW

104.   PLAINTIFF realleges the allegations contained in the above paragraphs, as if fully set forth herein.

105.   Patrolmen DEFENDANTS unlawfully restrained the PLAINTIFF's freedom of movement when they detained, arrested and searched him.

106.   The DEFENDANTS lacked probable cause to detain, arrest or search the PLAINTIFF.

107.   The DEFENDANTS used a threat of force and show of authority to detain, arrest, and search the PLAINTIFF against his will and without his consent. 9

108.   DEFENDANTS are personally liable and ineligible for qualified immunity as their conduct violated the PLAINTIFF's constitutional rights, and those rights were clearly established at the time of the violation.

109.   The City of Brooklyn is liable for failing to properly train and supervise the defendant's and for retaining the DEFENDANTS is such failures amounting to deliberate indifference.

110.   As a result of the DEFENDANTS' false imprisonment of the PLAINTIFF, he suffered loss of income, emotional distress and humiliation, and suffered harm to his reputation.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF demands judgment against all DEFENDANTS, jointly and severally, individually and collectively, on each of his eight Counts, as follows:

Declare that DEFENDANTS' acts and conduct constituted violations of the Fourth and Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. §§ 1983;

Judgment for compensatory damages in an amount to be determined in a trial by jury;

Judgment for exemplary damages;

For pre-judgment interest;

For post-judgment interest;

Judgment for all economic and non-economic damages for medical costs, pain, suffering, humiliation and emotional distress in an amount to be determined in a trial by jury for at least $1,000,000.00;

Cost of suit;

Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

Trial by jury as to all issues so triable; and

Such other relief as this Court may deem equitable, just, and proper.

///

///

///

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 16th day of March, 2023.

By: _____

PLAINTIFF PHILIP M. WASELESKI