# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| PHILIP M. WASELESKI, | ) | CASE NO. 1:23-cv-00548 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BROOKLYN, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

Before the Court is Defendants' motion for summary judgment.  (ECF No. 51).  Also pending is Plaintiff's cross-motion for summary judgment.  (ECF No. 54).  For the reasons discussed below, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's cross-motion for summary judgment is **DENIED**.

## I.    FACTUAL BACKGROUND

On January 3, 2021, around 12:33 AM, Plaintiff Philip Waseleski was driving in Brooklyn, Ohio and turned left onto an access road without a visible turn signal before shortly coming to a stop at a Sheetz Gas Station.  (ECF No. 51, Ex. A-1 [hereinafter Dash Cam], 0:00–0:40; ECF No. 51-1, ¶ 2; ECF No. 54-1, PageID #520).  Defendant Tony Aftim, an officer with the Brooklyn Police Department, then initiated a traffic stop.  (Dash Cam, 0:43–01:40; ECF No. 51-1, ¶ 2).  Aftim stated that the stop was initiated because Plaintiff stopped in the street before turning left into the gas station and failed to use a turn signal before executing the turn.  (ECF No. 51, Ex. A-2 [hereinafter Body Cam], 00:25, 23:10; ECF No. 54-1, PageID #498, 511).

During the traffic stop, Aftim asked Plaintiff to exit his vehicle and Plaintiff complied. (Dash Cam, 2:06–2:16; Body Cam, 0:52–1:05).  Aftim asked Plaintiff if he had any weapons on

1

him and if he would mind if Aftim conducted a safety check of Plaintiff, to which Plaintiff responded no.  (Body Cam, 2:51–2:57; ECF No. 54-1, PageID #501).  Aftim searched Plaintiff's person and found a brown bottle in Plaintiff's pants pocket.  (Body Cam, 3:07–3:18).  When asked what the bottle was, Plaintiff responded that "some guy" put it in his pocket, he had no clue why it was placed there, he did not do drugs, and Aftim was free to take the bottle.  (Body Cam, 3:18–3:45; ECF No. 54-1, PageID #501).

Suspecting the bottle to contain an illegal substance, Aftim placed Plaintiff in the back of his police cruiser.  (Body Cam, 3:47–4:25; ECF No. 54-1, PageID #502).  Plaintiff was detained for about 20 minutes while Aftim, along with Defendants Pitts and Spisak (BPD officers), attempted to identify the substance.  (Body Cam, 03:45–25:30).  Upon determining that it was not an illegal drug, Aftim issued Plaintiff a traffic citation, explaining that it was for failure to use a turn signal.  (Body Cam, 23:02–31:05; ECF No. 54-1, PageID #511–12).  The traffic citation listed the offense as "Turn Signal – left" and cited Brooklyn, Ohio, Codified Ordinance 331.10(a)(2).  (ECF No. 54-1).  Before being released, Aftim asked if Plaintiff would mind if the officers checked his vehicle before letting him go; Plaintiff consented, and Aftim searched Plaintiff's vehicle.  (Body Cam, 4:09–24:32, 26:12–27:33; ECF No. 54-1, PageID #511).

On January 26, 2021, Plaintiff appeared before Brooklyn Mayor's Court to contest the traffic citation issued by Aftim, he entered a plea of not guilty, and the case was transferred to Parma Municipal Court for further proceedings.  (ECF No. 51-5).  On August 23, 2021, Parma Municipal Court entered a finding of not guilty.  Judgment, *City of Brooklyn v. Waseleski*, Case No. 21TRD01288 (Parma Mun. Ct. Aug. 23, 2021).

2

## II.     PROCEDURAL BACKGROUND

On March 16, 2023, Plaintiff filed a complaint against City of Brooklyn ("Brooklyn"), Scott Mielke, Chief of the Brooklyn Police Department ("BPD"), and James J. McDonnell, prosecutor for Brooklyn, as well as Tony Aftim, Kyle Pitts, and Mike Spisak, all law enforcement officers for the BPD (collectively, "Defendants").  (ECF No. 1).  Plaintiff asserted eight claims: (i) Unlawful Search, in violation of the Fourth Amendment (Original Count 1);[1] (ii) Unlawful Seizure, in violation of the Fourth Amendment (Original Count 2); (iii) Municipal Liability for Unconstitutional Custom or Policy (Original Count 3); (iv) Municipal Liability for Failure to Train (Original Count 4); (v) Negligent Hiring, Training, and Supervision (Original Count 5); (vi) Negligent Infliction of Emotional Distress (Original Count 6); (vii) Malicious Prosecution, in violation of the Fourth Amendment (Original Count 7); and (viii) False Imprisonment (Original Count 8).[2]  (*Id.* at PageID #8–19).

On October 20, 2023, Defendants filed a motion for judgment on the pleadings.  (ECF No. 13).  Defendants argued that Plaintiff's claims were all time-barred by the applicable statutes of limitations and Plaintiff failed to timely serve Defendants.  (*Id.* at PageID #70–73).  On December 12, 2023, Plaintiff moved for leave to file an amended complaint, (ECF No. 22), providing a proposed amended complaint that added a ninth claim for assault and battery, (ECF No. 22-2).

On April 24, 2024, the Court ruled on the pending motion for judgment on the pleadings. (ECF No. 32).  The Court granted Defendants' motion in part, dismissing Original Count 6 without

---

[1] To maintain a distinction between the claims asserted in the original and amended complaints, the claims asserted in the original complaint shall be labeled as "Original Counts" (*e.g.*, Original Count 1), while the claims asserted in the amended complaint shall be labeled simply as "Counts" (*e.g.*, Count 1).

[2] Original Counts 1 (Unlawful Search), 2 (Unlawful Seizure), 3 (Unconstitutional Custom/Policy), 4 (Failure to Train), and 7 (Malicious Prosecution) were all federal claims brought under 42 U.S.C. § 1983, (ECF No. 1, PageID #8–15, 17–18), while Original Counts 5 (Negligent Hiring, Training, Supervision), 6 (Negligent Infliction of Emotional Distress), and 8 (False Imprisonment) were claims brought under Ohio law, (*id.* at PageID #15–17, 18–19).

prejudice for failure to state a claim.  (*Id.* at PageID #238).  The Court also found that Original

Counts 1, 2, 3, 4, 5, and 8 were all barred by the statute of limitations.  (*Id.*).  The Court denied

Defendants' motion as to Original Count 7 and granted Plaintiff leave to file an amended complaint

within 30 days.  (*Id.* at PageID #238–39).

On May 23, 2024, Plaintiff filed an amended complaint.  (ECF No. 33).  The amended

complaint asserts claims based on the same factual allegations as the original complaint.  (*Id.* at

PageID #247–55).  Specifically, Plaintiff alleges that during the traffic stop on January 3, 2021,

Defendant Aftim searched and seized Plaintiff and his personal property without probable cause

and with discriminatory intent.  (*Id.* at PageID #243–45).  Plaintiff further claims that the BPD has

become politicized, and that Brooklyn is liable for the actions of its law enforcement officers.  (*Id.*

at PageID #244).  Plaintiff also alleges that Defendants prosecuted him in Brooklyn Mayor's Court

and then Parma Municipal Court without probable cause.  (*Id.* at PageID #250–52).  Plaintiff

asserts ten claims: (i) Negligent Infliction of Emotional Distress (Count 1); (ii) Malicious

Prosecution and Abuse of Process (Count 2); (iii) Denial of Right to Counsel (Count 3);

(iv) Violation of Department Policies (Count 4); (v) Threat of Bodily Injury and Infliction of

Bodily Injury (Count 5); (vi) Violation of Due Process Rights (Count 6); (vii) Failure to Train and

Supervise (Count 7); (viii) Conspiracy to Deprive Rights (Count 8); (ix) Violation of Equal

Protection Rights (Count 9); and (x) Invasion of Privacy (Count 10).[3]

On October 22, 2024, Defendants filed their motion for summary judgment.  (ECF No. 51).

Defendants argue that all of Plaintiff's claims, apart from his malicious prosecution claim, are

---

[3] Counts 2 (Malicious Prosecution and Abuse of Process), 3 (Denial of Right to Counsel), 4 (Violation of Departmental Policies), 6 (Violation of Due Process Rights), 7 (Failure to Train and Supervise), and 9 (Violation of Equal Protection Rights) are all federal claims brought under 42 U.S.C. § 1983, (ECF No. 33, PageID #255–68), while Counts 1 (Negligent Infliction of Emotional Distress), 5 (Threat of Bodily Injury and Infliction of Bodily Injury), 8 (Conspiracy to Deprive Rights) and 10 (Invasion of Privacy) are claims brought under Ohio law, (*id.* at PageID #254–70).

barred by the doctrine of *res judicata* and the statute of limitations.  (*Id.* at PageID #381, 383–84, 397).  Alternatively, Defendants contend that Plaintiff's § 1983 claims fail because Defendants are entitled to qualified immunity.  (*Id.* at PageID #384–85).  Defendants also argue that they are entitled to summary judgment on the merits.  (*Id.* at PageID #385–97).

On October 24, 2024, Plaintiff filed a cross-motion for summary judgment.  (ECF No. 54).  Plaintiff argues that none of his claims are time-barred because they have been equitably tolled.  (*Id.* at PageID #423).  Plaintiff also argues that Defendants are not entitled to qualified immunity on all § 1983 claims because their actions exceeded the scope of lawful police activity.  (*Id.* at PageID #424–25).  Finally, Plaintiff contends that he has sufficiently stated a claim for each asserted count.  (*Id.* at PageID #425).

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  The Rule states that a district court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if it is "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  A fact is material if "its resolution might affect the outcome of the suit under the governing substantive law."  *Id.*  The moving party bears the burden of showing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The court views the facts and draws all reasonable inferences in favor of the non-moving party.  *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).  Once the moving party satisfies its burden, the burden shifts to the non-moving party to produce evidence that demonstrates that there is a genuine dispute of a material fact for trial.  *Anderson v. Liberty*

5

*Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).

## IV.  DISCUSSION

While the parties' cross-motions for summary judgment present various arguments on the merits, Defendants' motion raises two threshold issues related to the doctrine of *res judicata* and the statute of limitations.  (ECF No. 51, PageID #383–84).  The Court will therefore address these threshold issues before addressing the merits arguments for any surviving claims.

### A.    *Res Judicata* and Law-of-the-Case Doctrine

Defendants argue that Plaintiff's § 1983 claims—aside from Count 2—are barred by the doctrine of *res judicata*, to the extent that those claims can be "interpreted as alleging unlawful search, unlawful seizure, unconstitutional custom/policy or municipal failure to train."  (ECF No. 51, PageID #383–84).  Plaintiff responds that *res judicata* does not preclude his claims, in part, because there has been no final judgment on the merits and the claims in the amended complaint are not identical to those in the original complaint.  (ECF No. 57, PageID #602–03).

*Res judicata* is a legal principle designed to prevent the relitigation of claims that have already been resolved by a final judgment.  *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015).  Its purpose is to promote judicial efficiency and finality by ensuring that issues previously decided are not repeatedly contested in different cases or courts.  *Id.*  The doctrine does not apply to ongoing litigation such as this case.  Thus, Plaintiff is correct that *res judicata* does not apply and Defendants' reliance on this doctrine is misplaced.

That said, a more appropriate framework for Defendants' argument would be the law-of-the-case doctrine.  While *res judicata* prevents relitigation of matters decided in a previous proceeding, the law-of-the-case doctrine provides that once a court has decided an issue during a

6

proceeding, the same court should adhere to that determination in later stages of the same case. *Howe*, 801 F.3d at 739; *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 338–39 (6th Cir. 2016). "The purpose of the law-of-the-case doctrine is to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *Howe*, 801 F.3d at 739 (emphasis in original) (internal quotation marks omitted). This doctrine is likewise meant to promote consistent rulings and judicial economy. *GMAC Mortg., LLC*, 651 F. App'x at 338–39.

Although Defendants did not explicitly invoke the law-of-the-case doctrine, the Court has the authority to raise the issue *sua sponte*. *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 758 F. App'x 392, 397 n.2 (6th Cir. 2018); *see also Arizona v. California*, 530 U.S. 392, 412 (2000) ("[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised." (citations and internal quotation marks omitted)); *United States v. Cheveres-Morales*, 83 F.4th 34, 40 (1st Cir. 2023) (recognizing that courts of appeals which have addressed the issue have held that a court may raise the law-of-the-case doctrine *sua sponte*); *Bollinger v. Oregon*, 172 F. App'x 770, 771 (9th Cir. 2006) ("Because the court itself has an interest in preventing repetitive litigation, we raise the law of the case argument sua sponte even though it has not been previously argued by the parties."). Having been put on notice, and to prevent potential relitigation of previously decided matters, the Court will *sua sponte* raise the law-of-the-case doctrine and apply it to specific claims when appropriate.

### B. Statute of Limitations and Equitable Tolling

Plaintiff brings Counts 2 (Malicious Prosecution and Abuse of Process), 3 (Denial of Right to Counsel), 4 (Violation of Departmental Policies), 6 (Violation of Due Process Rights), 9 (Failure to Train and Supervise), and 9 (Violation of Equal Protection Rights) pursuant to 42 U.S.C. § 1983. (ECF No. 33, PageID #255–68). Defendants argue that Plaintiff's § 1983 claims—apart from

Count 2—are barred by the applicable statute of limitations. (ECF No. 51, PageID #384). Defendants also argue that Plaintiff's state-law claims should be dismissed because they are also barred by the applicable statutes of limitations. (ECF No. 51, PageID #396–98). Plaintiff argues that his claims are timely because the statutes of limitations for his claims were equitably tolled. (ECF No. 54, PageID #423, 425).

The statute of limitations for § 1983 claims is determined by the limitations period for personal injury claims. *Beaver St. Invs., LLC v. Summit Cty.*, 65 F.4th 822, 826 (6th Cir. 2023) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)); *Bowden v. City of Franklin*, 13 F. App'x 266, 272 (6th Cir. 2001); *see also Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 1989) ("The Supreme Court has held that § 1983 claims are best characterized as tort actions for the recovery of damages for personal injury and that federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought."). The Ohio statute of limitations for personal injury claims is two years. Ohio Rev. Code Ann. § 2305.10 (LexisNexis 2024); *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). Thus, the Sixth Circuit has held that a two-year statute of limitations applies to § 1983 claims in Ohio. *See Beaver St. Invs.*, 65 F.4th at 826; *Cooey*, 479 F.3d at 416 (citing *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003); *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) (en banc)).

Federal law governs the question of when the limitations period for § 1983 claims begins to run. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984); *see also Bowden*, 13 F. App'x at 272 ("While statutes of limitations and tolling principles are governed by state law, the question of when a federal civil rights claim accrues remains one of federal law."). "[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (cleaned up). Because an action

generally accrues "when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred," courts usually determine the accrual of a § 1983 action by "look[ing] to the event that should have alerted the typical lay person to protect his or her rights." *Cooey*, 479 F.3d at 416 (citations omitted).  "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (citations omitted). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273.

Equitable tolling is the doctrine that "the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Mezo v. Holder*, 615 F.3d 616, 620 (6th Cir. 2010).  "[T]olling principles are governed by state law[.]" *Bowden v. City of Franklin*, 13 F. App'x 266, 272 (6th Cir. 2001); *see Roberson v. Macnicol*, 698 F. App'x 248, 250 (6th Cir. 2017) ("Having borrowed the state's statute of limitations for the § 1983 claims, we apply the state's tolling rules as long as they are not inconsistent with federal law or policy." (quoting *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (6th Cir. 2015) (internal quotations omitted)).

"Ohio courts have rarely invoked the doctrine of equitable tolling." *Ashdown v. Buchanan*, 2021 U.S. Dist. LEXIS 119649, 12 (S.D. Ohio June 28, 2021) (citing *Weikle v. Skorepa*, 69 F. App'x 684, 687 (6th Cir. 2003)).  "A litigant seeking equitable tolling must show that he has diligently pursued his rights, but some extraordinary circumstance stood in his way and prevented timely action." *Id.* (internal quotations omitted).  "Equitable tolling under Ohio law is to be applied sparingly and only in exceptional circumstances." *Id.* (citing *G.G. Marck and Associates, Inc. v. Peng*, 762 F. App'x 303, 312 (6th Cir. 2019)); *Jones v. Ohio Dep't of Pub. Safety*, 2024 U.S. Dist. LEXIS 22105, 13 (S.D. Ohio Feb. 7, 2024) ("In Ohio, '[e]quitable tolling is only available in

compelling cases which justify a departure from established procedure.'" (quoting *Roach v. Vapor Station Columbus, Inc.*, 2022-Ohio-2106, ¶ 8 (10th Dist.))). "The doctrine is generally limited to circumstances in which a litigant is intentionally misled or tricked into missing the filing deadline." *Roach*, 2022-Ohio-2106, ¶ 8. "Federal courts also apply equitable tolling sparingly." *Ashdown*, 2021 U.S. Dist. LEXIS at 12 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (internal citations omitted)).

The Court previously determined that Plaintiff was not entitled to equitable tolling, (ECF No. 32, PageID #224–26), and nothing provided in his instant motion for summary judgment alters that analysis. As explained then, and more fully discussed below, nearly all of Plaintiff's claims accrued on January 3, 2021. (*Id.* at PageID #229–35, 238). Plaintiff generally argues that he is entitled to equitable tolling because Defendants delayed providing relevant discovery and critical evidence to Plaintiff. (ECF No. 54, PageID #423, 425). But, even if Defendants delayed discovery, Plaintiff previously acknowledged that he was provided with the relevant discovery on March 25, 2021. (ECF No. 20, PageID #109). More importantly, Plaintiff has conceded that he was aware of his claims against Defendants on March 25, 2021. (*Id.*). It is unclear how the alleged 2-month delay in providing discovery would have prevented Plaintiff from filing a complaint by January 3, 2023, over 1 year and 9 months later.

Plaintiff has provided no explanation or excuse for why he waited nearly two years before filing this action. (ECF No. 54, PageID #423). Plaintiff also states, without further elaboration, that "delays in obtaining critical evidence . . . were caused by Defendants' actions and justif[y] the application of equitable tolling." (*Id.*). Putting aside the conclusory nature of this statement, Plaintiff provides no allegations of misconduct, other than the delayed discovery in the proceeding before Parma Municipal Court, that prevented a timely filing. Plaintiff has not established good

cause, excusable neglect, or extraordinary circumstances for his late-filed complaint.  Plaintiff is therefore not entitled to equitable tolling of his federal and state-law claims.

### C.  Law of the Case Doctrine and Statute of Limitations Analysis for § 1983 Claims

#### 1.  Count 3 — Denial of Right to Counsel

Plaintiff alleges that Aftim violated his Sixth Amendment right to counsel during the traffic stop on January 3, 2021, because Plaintiff requested an attorney and Aftim continued to interrogate him.  (ECF No. 33, PageID #257).  Because Plaintiff would have been aware that his request for counsel had been denied at that time, this claim accrued on January 3, 2021.  Plaintiff did not file this action until March 16, 2023—after the two-year statute of limitations had lapsed.  Thus, Count 3 is barred by the statute of limitations and is **DISMISSED**.[4]

#### 2.  Count 4 — Violation of Departmental Policies

The Court construes Count 4 (Violation of Department Policies) as a reassertion of Original Count 4 (Municipal Liability for Failure to Train (42 U.S.C. § 1983)).  (*Compare* ECF No. 33, PageID #258, *with* ECF No. 1, PageID #12–15).  In the original complaint, under Original Count 4, Plaintiff asserted a *Monell*[5] claim that Brooklyn was liable for a failure to train police officers regarding unreasonable searches and seizures.  (ECF No. 1, PageID #12–15).  In the amended complaint, Count 4: (i) alleges that Defendants' conduct (presumably during the January 3, 2021

---

[4] Alternatively, this claim fails on the merits.  The Sixth Amendment right to counsel attaches when a criminal prosecution is commenced, which occurs "only at or after 'the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  *Turner v. United States*, 885 F.3d 949, 952 (6th Cir. 2018) (en banc) (quoting *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 198, 128 S. Ct. 2578, 171 L. Ed. 2d 366 (2008)).  Plaintiff requested to speak with an attorney before Aftim issued the traffic citation, (Body Cam, 11:29–11:33, 22:40–45; ECF No. 54-1, PageID #506, 510), but he did not request an attorney after the citation was issued, (Body Cam, 25:00–31:05; ECF No. 54-1, PageID #512–16).  Even if the issuance of a traffic citation qualified as the initiation of adversary judicial criminal proceedings, no Sixth Amendment right to counsel had attached at that time when Plaintiff requested to speak with an attorney because no adversary judicial proceedings had been initiated against him.  *See Turner*, 885 F.3d at 952.  As a result, this claim would fail on the merits even if it were not barred by the statute of limitations.
[5] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978).

traffic stop) failed to adhere to BPD standards; (ii) requests disciplinary measures for violations of BPD policies, enhanced training programs for BPD officers, and robust oversight; and (iii) cites Supreme Court precedent that "municipalities can be held liable under § 1983 for failure to adequately train their officers . . . ." (ECF No. 33, PageID #257–59). Both versions of Count 4 essentially assert the same claim against Brooklyn for failure to train.

While Count 4 is labeled "Violation of Department Policies," there is no cognizable claim for the mere violation of department/municipal policies under federal or Ohio law. *See Peters v. Ohio Dep't of Rehab & Corr.*, 2015-Ohio-2668, ¶ 10–11 (Ohio Cr. App. 2015) (concluding that violations of internal regulations do not support a cause of action by themselves); *Cook v. Ohio Dep't of Rehab & Corr.*, 2019-Ohio-5479, ¶ 9 (Ohio Ct. Cl. 2019) ("Insofar as plaintiff alleges that defendant violated its own internal rules or policies, there is no cause of action for a violation of internal rules or polices."); *Myers v. City of Charleston*, No. 2:19-cv-00757, 2020 U.S. Dist. LEXIS 128386, at *42–44 (S.D. W. Va. July 21, 2020) ("The violation of an agency's internal rules or policies does not give rise to an independent cause of action. Simply, the violation of an agency's internal policies, with nothing more, is not a legally recognizable claim.") (collecting cases). There is a claim for unconstitutional departmental policies under § 1983; but that claim requires a plaintiff to show that the relevant policies *themselves* are unconstitutional. *City of Canton v. Harris*, 489 U.S. 378, 386–87, 109 S. Ct. 1197 (1989). But the amended complaint sets forth no allegations that any BPD policies are unconstitutional. (ECF No. 33, PageID #257–59). Given the allegations under Count 4, the only cognizable claim is a failure to train claim under § 1983.

In the April 24, 2024 Memorandum Opinion and Order, the Court determined that Plaintiff's § 1983 failure to train claim accrued on January 3, 2021 and was barred by the statute

12

of limitations.  (ECF No. 32, PageID #231–32).  While Plaintiff does not explicitly cite *Monell* under Count 4, he states that "municipalities can be held liable under § 1983 for failure to adequately train their officers[,]" which would invoke *Monell* liability.  (ECF No. 33, PageID #258).  Plaintiff cites *City of Canton v. Harris*, a Supreme Court case that analyzes municipal liability under *Monell* in the context of a failure to train police officers.  *Harris*, 489 U.S at 385–92. Because the claim under Count 4 arises from the same factual predicate and restates the same legal theory as Plaintiff's prior *Monell* claim, it is barred by the law-of-the-case doctrine.

Alternatively, even if the law-of-the case doctrine did not apply, Count 4 is barred by the statute of limitations.  This § 1983 failure to train claim is based on the conduct of the police officer defendants during the January 3, 2021 traffic stop.  Thus, the claim accrued on January 3, 2021 and is subject to a two-year statute of limitations.  The statute of limitations lapsed on January 3, 2023, months before the original complaint was filed.  Because Count 4 is barred under the law-of-the case doctrine and the statute of limitations, it is **DISMISSED**.

### 3.    Count 5 — Threat of Bodily Injury and Infliction of Bodily Injury

The Court construes Count 5 as a reassertion of Original Counts 1 and 2.  (*Compare* ECF No. 33, PageID #259–61, *with* ECF No. 1, PageID #8–11).  Under Count 5, Plaintiff asserts that Defendants Brooklyn and Aftim violated his Fourth Amendment rights by using excessive force during the traffic stop on January 3, 2021.  (ECF No. 33, PageID #259).  Plaintiff alleges that Defendants threatened imminent bodily harm and inflicted bodily injury upon him without legal justification or consent during the traffic stop.  (*Id.*).  Count 5 applies the same Fourth Amendment language ("unreasonable seizures") to the same fact pattern (the traffic stop on January 3, 2021) to make the same basic argument (violation of 4th Amendment rights) as Original Counts 1 and 2. (*Compare* ECF No. 33, PageID #259–61, *with* ECF No. 1, PageID #8–11).  Thus, the Court finds

that Count 5 essentially restates the same Fourth Amendment claim of unreasonable search and seizure asserted under Original Counts 1 and 2, which the Court dismissed with prejudice.  (ECF No. 32, PageID #228–29).  Count 5 is therefore barred by the law-of-the-case doctrine.

Alternatively, Count 5 is otherwise barred by the statute of limitations.  Plaintiff's claims for unlawful search and seizure, brought under § 1983 and based on the January 3, 2021 traffic stop, accrued on January 3, 2021 and are subject to a two-year statute of limitations.  (*See* ECF No. 32, PageID #226–27, 229).  The statute of limitations lapsed on January 3, 2023, months before the original complaint was filed.  Thus, even if Count 5 were not barred by law-of-the-case doctrine, it would still be untimely.  Accordingly, Count 5 is **DISMISSED**.

### 4.    *Count 6 — Violation of Due Process*

The Court construes Count 6 as a reassertion of Original Counts 1 and 2.  (*Compare* ECF No. 33, PageID #261–63, *with* ECF No. 1, PageID #8–11).  Count 6 alleges that the "unwarranted stop, search, and detention" conducted by Defendants "violated Plaintiff's procedural due process rights by depriving him of liberty and property without adequate justification or legal process." (ECF No. 33, ¶ 92).  Plaintiff further alleges that he was stopped, searched, and seized without probable cause, citing two Supreme Court cases that concern a law enforcement officer's ability to initiate a stop and search under the Fourth Amendment.  (*Id.* ¶ 93 & n.12–13 (citing *Terry v. Ohio*, 392 U.S. 1, 4, 88 S. Ct. 1868, 1871 (1968); and *Illinois v. Wardlow*, 528 U.S. 119, 121, 120 S. Ct. 673, 674 (2000)).  While Plaintiff frames this as a due process violation, the substance of this claim remains grounded in the Fourth Amendment's protections against unreasonable searches and seizures.  Because Count 6 relies on the same factual allegations and legal theories as Plaintiff's previously dismissed claims based on unreasonable search and seizure (Original Counts 1 and 2), it is barred by the law-of-the-case doctrine.

14

Alternatively, Count 6 is barred by the statute of limitations.  Plaintiff's claim under Count 6 is based on the January 3, 2021 stop, search, and seizure, and is subject to § 1983's two-year statute of limitations.  As discussed previously, the statute of limitations for such a claim lapsed on January 3, 2023, months before the original complaint was filed.  Thus, even if Count 6 were not barred by law-of-the-case doctrine, it is untimely.  Accordingly, Count 6 is **DISMISSED**.

        *5.*    *Count 7 — Failure to Train and Supervise*

Plaintiff titled Count 7 as "Failure to Train and Supervise," and he alleges that Brooklyn failed "to ensure proper training and supervision protocols for its employees," thereby violating his constitutional rights.  (ECF No. 33, PageID #263).  This claim is nearly identical to Original Count 5 ("Negligent Hiring Training and Supervision"), which the Court dismissed as time-barred. (ECF No. 1, PageID #15–16; ECF No. 32, PageID #234).  The relevant difference between the two counts, is that Count 7 is brought under § 1983, while Original Count 5 was brought under Ohio law.  (*Compare* ECF No. 33, PageID #263–64, *with* ECF No. 1, PageID #15–16).

Because Count 7 is a distinct federal claim, it is not barred by the law-of-the-case doctrine. Even so, it is barred by the statute of limitations.  Count 7 arises from the defendant police officers' conduct during the January 3, 2021 traffic stop.  (ECF No. 33, PageID #263–64).  As discussed previously, Plaintiff's § 1983 claims are governed by a two-year statute of limitations, those claims accrued on January 3, 2021, and Plaintiff is not entitled to equitable tolling.  Thus, the statute of limitations on Plaintiff's failure to train and supervise claim in Count 7 lapsed on January 3, 2023, months before the original complaint was filed.  Accordingly, Count 7 is **DISMISSED** as time-barred.

### 6. Count 9 — Violation of Equal Protection Rights

In Count 9, Plaintiff alleges that Defendants violated his equal protection rights by "intentionally targeting Plaintiff based on their gender identity and sexual orientation." (ECF No. 33, PageID #267). Plaintiff further alleges that the "unlawful stop, search, and seizure, and the subsequent harassment and discriminatory remarks," were motivated by discriminatory bias. (*Id.*). These alleged discriminatory actions stem from the January 3, 2021 traffic stop. The Court finds that Plaintiff was reasonably aware of the discrimination at the time of the traffic stop. During the stop, Plaintiff repeatedly accused Aftim of "targeting" him because of his sexual orientation. (Body Cam, 14:32–31:05; ECF No. 54-1, PageID #508–09, 512–13). Plaintiff also filed a formal complaint with BPD on March 15, 2021, claiming that Aftim, Pitts, and Spisak all discriminated against him during the traffic stop. (ECF No. 54-1, PageID #539–544). As with Plaintiff's previous § 1983 claims, Count 9 accrued on January 3, 2021 and was subject to a two-year statute of limitations that lapsed on January 3, 2023. Because this action was initiated on March 16, 2023, Count 9 is barred by the statute of limitations. Accordingly, Count 9 is **DISMISSED**.[6]

### 7. Count 10 — Invasion of Privacy (Ohio Data Protection Act)

The Court construes Count 10 as a reassertion of Original Counts 1 and 2. (*Compare* ECF No. 33, PageID #268–70, *with* ECF No. 1, PageID #8–11). Under Count 10, Plaintiff alleges that

---

[6] Alternatively, this claim would fail on the merits if it were not barred by the statute of limitations. The Equal Protection Clause of the Fourteenth Amendment commands that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[A] valid equal protection claim requires showing that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Reform America v. City of Detroit, Michigan*, 37 F.4th 1138, 1152 (6th Cir. 2022). Still, "to establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)). Here, to prevail on his equal protection claim, Plaintiff must demonstrate intentional discrimination based on his sexual orientation and gender identity, not merely that he was treated unfairly from an individual perspective. *See Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).

Defendants invaded his privacy by stopping him and "unlawfully search[ing] and seiz[ing] [his] personal belongings without a search warrant or probable cause." (ECF No. 33, ¶114). While the heading of Count 10 refers to the Ohio Data Privacy Act ("ODPA"), the factual allegations and substance of Plaintiff's legal arguments indicate that Count 10 is, in reality, a Fourth Amendment unreasonable search and seizure claim.[7] (*Id.* ¶¶ 113–14, 116; ECF No. 54, PageID #414). As explained previously, the Court dismissed Plaintiff's Fourth Amendment unreasonable search and seizure claims in the original complaint (Original Counts 1 and 2) with prejudice. Thus, Count 10 is barred by the law-of-the-case doctrine and is **DISMISSED**.

### D.    Law-of-the-Case Doctrine and Statute of Limitations Analysis for State-Law Claims

#### 1.    *Count 1 — Negligent Infliction of Emotional Distress*

In Count 1, Plaintiff alleges that Defendants engaged in conduct constituting negligent infliction of emotional distress during the January 3, 2021 traffic stop. (ECF No. 33, PageID #254). Defendants argue that Count 1 is barred by the two-year statute of limitations. (ECF No. 51, PageID #396–98). They also argue that Count 1 should be dismissed because:

---

Although Plaintiff does not clearly identify the protected class to which he is a member, the pleadings and Plaintiff's briefing appear to identify him as a member of the LGBTQ community and a person with a non-conforming gender identity. (ECF No. 33, ¶¶ 7, 43; *see* ECF No. 54, PageID #413). Plaintiff has presented no evidence the defendant officers treated him differently from individuals who are not members of the LGBTQ community or have a conforming gender identity. Nor has he presented evidence that the defendant police officers were motivated by discriminatory animus. Nothing from Aftim's body camera footage or the transcript of the traffic stop establishes that Aftim's initiation of the traffic stop, search of Plaintiff's person, and detainment of Plaintiff after finding an unidentified substance on his person was motivated by discriminatory animus. (*See* Body Cam; ECF No. 54-1, PageID #501–16). Plaintiff instead provides conclusory allegations and arguments that he was unlawfully detained, searched, and subjected to discriminatory remarks and conduct. Because Plaintiff has failed to adduce any evidence that he was treated disparately by Defendants, or that Defendants' treatment of him was motivated by discriminatory animus, Defendants would be entitled to summary judgment on the merits of Plaintiff's equal protection claim.

[7] To the extent that Plaintiff intended to assert a claim based on violations of the ODPA, he cannot sustain such a claim as a matter of law. In data breach cases, the ODPA provides a safe harbor from state tort actions to Ohio businesses which have developed and use cybersecurity frameworks to protect personal information. Ohio Data Protection Act (SB 220), codified at Ohio Rev. Code §§ 1354.01–1354.05. First, the factual pleadings under Count 10 are wholly irrelevant to such a claim, focusing instead on the alleged unlawful search and seizure of Plaintiff during the January 3, 2021 traffic stop. Second, and more importantly, the ODPA does not create a private right of action. Ohio Rev. Code § 1354.04.

(i) Defendants are entitled to qualified immunity; and (ii) Plaintiff was not a bystander and there is no evidence that Plaintiff was reasonably in fear of physical consequences for his person. (*Id.* at PageID #397).

Under Ohio law, claims for negligent infliction of emotional distress are subject to the two-year statute of limitations under Ohio Rev. Code § 2305.10(A). *Callaway v. Nu-Cor Auto. Corp.*, 166 Ohio App. 3d 56, 65, 2006 Ohio 1343, 849 N.E.2d 62 (Ohio Ct. App. 2006); *Carter v. Nat'l City Bank*, No. 1:17-cv-508, 2018 U.S. Dist. LEXIS 122683, at *18 (S.D. Ohio July 23, 2018) (citing *Lawyer's Coop. Pub. Co. v. Muething*, 65 Ohio St. 3d 273, 603 N.E.2d 969, 975 (Ohio 1992)). Claims for infliction of emotional distress accrue when the tort is complete, which is "at the time the injury is incurred and the emotional impact is felt." *Dobrski v. Int'l Union*, No. 1:13-cv-1439, Yes., at *13 (N.D. Ohio July 9, 2013) (quoting *Biro v. Hartman Funeral Home*, 107 Ohio App. 3d 508, 514, 669 N.E.2d 65, 68 (Ohio Ct. App. 1995); and citing *Stewart v. Allen*, 2008-Ohio-1645, ¶ 22 (Ohio Ct. App. 2008)); *cf. Bremar v. Ohio Univ.*, 2022-Ohio-1382, ¶ 37 (Ohio Ct. App. 2022) ("A cause of action for intentional infliction of emotional distress accrues and the statute of limitations begins to run at the time the wrongful act is committed and the emotional impact is felt.").

The Court dismissed Plaintiff's original negligent infliction of emotional distress claim (Original Count 6) for failure to state a claim, in part, because Plaintiff failed to allege: (i) what specific conduct, by which specific defendants, was particularly extreme or outrageous and caused him emotional distress; and (ii) when the emotional impact was initially felt. (ECF No. 32, PageID #236–37). The amended complaint now identifies the specific conduct that caused Plaintiff's emotional distress, all of which relate to the January 3, 2021 traffic stop: "By unlawfully detaining Plaintiff, conducting an invasive search without probable cause, and subjecting Plaintiff to

harassment and discrimination based upon his gender identity and use of personal protective equipment, Defendants engaged in conduct that was utterly intolerable and shocking to the conscience." (ECF No. 33, ¶ 66).  The amended complaint still fails to specify when Plaintiff first felt the emotional distress, and Plaintiff's briefing fares no better.

That said, the Court can surmise that Plaintiff first felt the emotional impact of the alleged "outrageous" and "egregious" conduct at the time of the traffic stop based on Plaintiff's own statements.  On Defendant Aftim's bodycam footage, Plaintiff admits feeling "embarrassed," "upset," and that they made a spectacle of him.  (Body Cam, 17:11–17:15, 27:36–31:05; ECF No. 54-1, PageID #509, 513–14).  Additionally, in his formal complaint filed with the BPD, Plaintiff explained that he believed: (i) he had been the target of discrimination, intimidation, and harassment by Aftim; and (ii) the traffic stop had made him feel a lack of trust with all law enforcement officers.  (ECF No. 54-1, PageID #541).  Finally, Plaintiff's states in a sworn declaration that his medical records verify the emotional impact (PTSD, mental anguish, depression, and emotional distress) caused by Defendants' actions dates back to the January 3, 2021 traffic stop.  (ECF No. 54-1, PageID #523).  The evidence before the Court, including Plaintiff's own representations, establishes that he felt the alleged emotional impact for the first time during the traffic stop on January 3, 2021.  Because Plaintiff did not file his complaint within two years of January 3, 2021, Plaintiff's claim for negligent infliction of emotional distress is barred by the statute of limitations.  Accordingly, Count 1 is **DISMISSED**.

### 2.  *Count 8 — Conspiracy to Deprive Rights*

Under Count 8, Plaintiff alleges that Defendants "conspired to deprive Plaintiff of their constitutional rights . . . as evidenced by the unlawful detention, search, and harassment experienced during the traffic stop on January 3, 2021."  (ECF No. 33, PageID #264–66).

Defendants argue that Count 8 should be dismissed because the statutes cited by Plaintiff are criminal statutes that do not apply to his civil claims.  (ECF No. 51, PageID #390).  Defendants are correct, the statutes that Plaintiff cites under Count 8—Ohio Rev. Code §§ 2923.01 and 2921.45—are criminal statutes that do not provide a private cause of action.  *See Gomez v. City of Canton Police Dep't*, 2024 U.S. Dist. LEXIS 93031, at *14 (N.D. Ohio May 24, 2024) (explaining that Ohio Rev. Code § 2921.45 does not provide a private cause of action); *Stewart v. Kahn*, No. 5:20-cv-2818, 2021 U.S. Dist. LEXIS 122844, at *8 (N.D. Ohio July 1, 2021) (dismissing a claim predicated on Ohio Rev. Code § 2921.45 because it is a criminal statute does not provide a civil cause of action); *Prior v. Mukasey*, No. 3:08CV994, 2008 U.S. Dist. LEXIS 100668, at *9 (N.D. Ohio Nov. 21, 2008) (same for § 2923.01).  Ohio courts have also held that "a plaintiff may not assert a civil claim based upon an alleged violation of a criminal statute because '[c]riminal violations are brought not in the name of an individual party but rather by, and on behalf of, the state of Ohio or its political subdivisions.'" *Gibson v. Rose*, No. 1:12-cv-1509, 2012 U.S. Dist. LEXIS 101604, at *24–25 (N.D. Ohio July 23, 2012) (quoting *Biomedical Innovations, Inc. v. McLaughlin*, 103 Ohio App. 3d 122, 658 N.E.2d 1084, 1086 (Ohio Ct. App. 1995)) (alteration in original).  As a result, claims based on criminal statutes that do not provide a civil cause of action must be dismissed as a matter of law.  *Carovac v. Lake Cty. Bd. of Developmental Disabilities/Deepwood*, 2020 U.S. Dist. LEXIS 165461, at *26 (N.D. Ohio Sept. 9, 2020).  Thus, to the extent that Plaintiff intended to assert conspiracy claims under Ohio criminal statutes, they fail as a matter of law.

Assuming that Plaintiff intended to assert a civil conspiracy claim, Count 8 is still barred by the statute of limitations.  Under Ohio law, "[t]he tort of civil conspiracy is a malicious combination of two or more persons to injure another in person or property, in a way not competent

for one alone, resulting in actual damages." *Carter v. Nat'l City Bank*, 2018 U.S. Dist. LEXIS 122683, at *6 (S.D. Ohio July 23, 2018) (quoting *Bradley v. Miller*, 96 F. Supp. 3d 753, 767 (S.D. Ohio 2015)).  The statute of limitations for civil conspiracy claims is the relevant limitations statute for the underlying cause of action.  *In re Fair Fin. Co.*, 834 F.3d 651, 679 (6th Cir. 2016).  The causes of action underlying the conspiracy claim under Count 8 are alleged violations of Plaintiff's constitutional rights based on unlawful search of seizure, false arrest and imprisonment, and discrimination brought pursuant to § 1983.  (ECF No. 33, PageID #264–66).  As a result, Count 8 is subject to § 1983's two-year statute of limitations.  *See In re Fair Fin. Co.*, 834 F.3d at 679; *Beaver St. Invs.*, 65 F.4th at 826.  Because the conspiracy claim is based on events from the January 3, 2021 traffic stop, this claim accrued on January 3, 2021 and the statute of limitations lapsed on January 3, 2023.  Accordingly, Count 8 is **DISMISSED.**

### E. Merits Analysis – Count 2

Defendants concede that Count 2 is a new claim that is not barred by the statute of limitations, and instead argue that they are entitled to summary judgment as a matter of law.  (ECF No. 51, PageID #383–88).  Based on its title, Plaintiff appears to be asserting two distinct claims in Count 2: (i) a malicious process claim under § 1983; and (ii) an abuse of process claim under Ohio law.[8]  (ECF No. 33, PageID #255).  Thus, the Court will address these two potential claims separately.

### 1. Count 2 — Malicious Prosecution Claim - § 1983

Plaintiff alleges that Defendants violated his Fourth Amendment rights by instigating a criminal prosecution without probable cause and with malicious intent.  (ECF No. 33, PageID #255–56).  Defendants argue that the traffic citation given to Plaintiff for a municipal violation is

---

[8] Count 2 is titled "Violation of Fourth Amendment Rights 42 U.S.C. § 1983 - Malicious Prosecution, and Abuse of Process in Ohio State Law."  (ECF No. 33, PageID #255).

insufficient to demonstrate a deprivation of liberty, so Plaintiff failed to establish a § 1983 malicious prosecution claim. (ECF No. 51, PageID #385–86). Plaintiff argues that the undisputed facts establish that Defendants are liable for malicious prosecution. (ECF No. 54, PageID #419–20; ECF No. 57, PageID #600).

To succeed on a § 1983 malicious prosecution claim premised on a Fourth Amendment violation, such as this case, the plaintiff must establish: (i) a criminal prosecution was initiated against the plaintiff and the defendants made, influenced, or participated in the decision to prosecute; (ii) there was a lack of probable cause; (iii) the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, and (iv) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)); *see also Legenzoff v. Steckel*, 564 F. App'x 136, 146 (6th Cir. 2014) (summarizing the elements of malicious prosecution established in *Sykes*). A malicious prosecution claim fails if the plaintiff does not demonstrate each element. *Dillon v. Hamlin*, 718 F. Supp. 3d 733, 745 (S.D. Ohio 2024).

Plaintiff's malicious prosecution claim fails here because he has not established all four elements. First, Plaintiff fails to establish the third element—Fourth Amendment deprivation of liberty. The third element requires Plaintiff to demonstrate that he suffered a deprivation of liberty "apart from the initial seizure." *Sykes*, 625 F.3d at 308–09. In other words, "the initial arrest alone is an insufficient deprivation of liberty." *Noonan v. Cty. of Oakland*, 683 F. App'x 455, 463 (6th Cir. 2017). The record evidence demonstrates that on January 3, 2021, Plaintiff was detained in the back of Officer Aftim's police cruiser for several minutes, he was issued a traffic citation, and then he was told he was free to leave. (Body Cam, 4:11–31:05; ECF No. 54-1, PageID #502–16). The amended complaint does not allege, nor does Plaintiff argue, that he was further detained or subsequently arrested by Officer Aftim, or any other defendant, after he was told he was free to,

22

and was allowed to, leave the scene. The issuance of a traffic citation does not constitute a seizure or liberty deprivation under the Fourth Amendment "because upon appearing to answer the charges in the ticket, [Plaintiff] would have been afforded a trial." *See DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999); *see also Noonan*, 683 F. App'x at 463 ("Rather, as most commonly applied in the Sixth Circuit, "'service with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation.'" (alteration adopted)) (collecting cases).

The amended complaint alleges that Plaintiff appeared before Brooklyn Mayor's Court and then before Parma Municipal Court to contest the traffic citation, before ultimately prevailing on the charge against him. (ECF No. 33, PageID #251–52). But Plaintiff does not allege, or argue, that he was later detained, incarcerated, required to post a bond, or subjected to any other conditions for pre-trial release. The allegations and the record establish that Plaintiff was merely required to appear in court to contest the citation. The Sixth Circuit has held that while onerous pretrial conditions can constitute a "deprivation of liberty," the requirement to attend court proceedings does not. *Tulis v. Orange*, No. 23-5804, 2024 U.S. App. LEXIS 21018, at *6–7 (6th Cir. Aug. 19, 2024) (collecting cases); *Cummin v. North*, 731 F. App'x 465, 473 (6th Cir. 2018) ("In the absence of additional, onerous conditions, we cannot say the requirement to appear in court constitutes a clearly established seizure."). Accordingly, Plaintiff has not established that he suffered the requisite deprivation of liberty under the Fourth Amendment. *See Noonan*, 683 F. App'x at 463; *Miller v. Maddox*, 866 F.3d 386, 393–94 (6th Cir. 2017) (finding a genuine issue of material fact on whether there was deprivation of liberty where the defendant was incarcerated, required to post bond, and subjected to other pretrial release conditions).

Even though the failure to establish one element dooms his malicious prosecution claim, Plaintiff also fails to establish the first element—the defendants made, influenced, or participated in the decision to prosecute. For police officers, the first element of a malicious prosecution claim "is met when an officer 'could reasonably foresee that his misconduct would contribute to an independent decision that results in a deprivation of liberty' and the misconduct actually does so." *Jackson v. City of Cleveland*, 925 F.3d 793, 820–21 (6th Cir. 2019) (quoting *Sykes*, 625 F.3d at 316). "This element is met when an officer includes 'misstatements and falsehoods in his investigatory materials' and those materials influence a prosecutor's decision to bring charges.'" *Id.* (quoting *Sykes*, 625 F.3d at 316). The officer must participate in a way that aids in the decision to prosecute, "as opposed to passively or neutrally participating." *Sykes*, 625 F.3d at 309 n.5. "Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Id.* at 311 n.9 (citing *Malley v. Briggs*, 475 U.S. 335, 344–45 n. 7, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

There is no evidence before the Court that Officers Mielke, Pitts, or Spisak acted to aid, or had any involvement whatsoever, in the decision to prosecute Plaintiff. For Defendant Aftim, Plaintiff provides evidence that Aftim issued the traffic citation that was the basis of the prosecution against Plaintiff.[9] (ECF No. 33, ¶¶ 39, 41; ECF No. 51-4). Plaintiff argues that Aftim knew the traffic citation was issued under the wrong code ordinance and the citation was merely a pretext to conceal discriminatory behavior and constitutional violations against Plaintiff. (ECF No. 54, PageID #416, 419–20; ECF No. 57, PageID #600). But there is no allegation or evidence that Aftim took any actions after issuing the traffic citation to actively influence the decision to

---

[9] There are no allegations under Count 2 that Defendant Aftim took any specific action to influence or aid the decision to prosecute Plaintiff. There is only the general allegation that "Defendants . . . have transgressed Plaintiff's Fourth Amendment rights by instigating a criminal prosecution devoid of probable cause and infused with malicious intent." (ECF No. 33, ¶ 72).

prosecute.[10]   Moreover, the evidence before the Court demonstrates that Aftim: (i) observed Plaintiff make a left turn without a turn signal; (ii) told Plaintiff and other officers he observed Plaintiff's failure to signal; and (iii) told Plaintiff and other officers he was issuing a traffic citation for failure to use a turn signal.  (Dash Cam, 0:00–0:40; Body Cam, 6:12–6:40; 12:00–12:20; 23:02–31:05; ECF No. 51-1, ¶ 2; ECF No. 54-1, PageID #498, 503, 506, 511–12, 520).  The traffic citation even lists the offense as "Turn Signal – left."  (ECF No. 51-4).  This evidence establishes probable cause for the traffic stop and indicates Aftim's intention to issue a traffic citation for failure to turn.

 Under Brooklyn, Ohio, Codified Ordinance 331.14(a), a person must give an appropriate signal before turning left, providing that "a signal of intention to turn or move right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning." The traffic citation issued to Plaintiff does not cite Brooklyn, Ohio, Codified Ordinance 331.14(a), but instead cites Ordinance 331.10(a)(2).  (ECF No. 51-4).  Plaintiff alleges that this was intentional; but Aftim states in an affidavit that he accidentally cited the wrong ordinance, which led to the dismissal of case against Plaintiff.  (ECF No. 51-1, ¶6).  The video evidence and Aftim's statements during the traffic stop corroborate that the citation to Ordinance 331.10(a)(2) was an accident and the intention was to issue a citation based on Ordinance 331.14(a).

 Even if Aftim intentionally provided an incorrect ordinance on the traffic citation, "merely filing an allegedly misleading case report, without more active participation, qualifies only as

---

[10] Plaintiff's opposition brief states that Aftim testified in Parma Municipal Court on August 26, 2021, (ECF No. 57, PageID #600), but he provides no evidence of that testimony, and the amended complaint lacks allegations to that effect.  Moreover, "[t]estifying at trial can never be the basis of a malicious prosecution claim, as 'a trial witness has absolute immunity with respect to any claim based on the witness' testimony.'"  *Richards*, 818 F' App'x at 493 (quoting *Rehberg v. Paulk*, 566 U.S. 356, 367, 132 S. Ct. 1497, 182 L. Ed. 2d 593 (2012)).  A plaintiff may sustain a malicious prosecution claim against an officer by providing evidence that the officer deliberately or recklessly gave false testimony at trial.  *See Novak v. City of Parma*, 33 F.4th 296, 307 (6th Cir. 2022).  Plaintiff has produced no evidence that Aftim deliberately gave false testimony, and Plaintiff's opposition brief merely states that Aftim testified that he holds a degree in criminal justice.  (*Id.*).

'passive or neutral' participation and is thus an insufficient basis for a malicious prosecution claim." *Richards v. Cty. of Washtenaw*, 818 F. App'x 487, 493–94 (6th Cir. 2020) (collecting cases). Based on the evidence before the Court, there is no genuine issue of material fact as to whether officer defendants (Defendants Aftim, Mielke, Pitts, and Spisak) made, influenced, or participated in the decision to prosecute Plaintiff with respect to the charges stemming from the January 3, 2021 traffic stop. *See id.* (determining a plaintiff could not sustain a malicious prosecution claim against a police officer defendant when there was no assertion of participation beyond filing an initial police report and testifying at trial). There is no evidence before the Court to indicate that they did.

For Defendant McDonnell, the prosecutor for Brooklyn, Plaintiff alleges that he: (i) failed to address Plaintiff's concerns when Plaintiff appeared before Brooklyn Mayor's Court to contest the traffic citation; (ii) transferred the case to Parma Municipal Court; (iii) refused to turn over discovery; and (iv) withheld exculpatory information to delay the trial. (ECF No. 33, ¶¶ 46, 48, 50–51). While these allegations, and the evidence presented, might establish that McDonnell participated in the decision to prosecute Plaintiff,[11] he is nevertheless entitled to absolute immunity. "A prosecutor is entitled to absolute immunity when [he] acts as an advocate for the State and engages in activity that is intimately associated with the judicial phase of the criminal process." *Rieves v. Town of Smyrna*, 959 F.3d 678, 691 (6th Cir. 2020) (quoting *Prince v. Hicks*, 198 F.3d 607, 611 (6th Cir. 1999)) (internal quotation marks omitted). "Absolute immunity extends to a prosecutor's conduct in 'initiating a prosecution and in presenting the [government]'s case.'" *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976));

---

[11] The evidence does not clearly establish whether McDonnell continued or was involved in the prosecution after the case was transferred to Parma Municipal Court, and the parties' respective briefing appears to differ as to the extent of his participation.

*see also Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) ("Absolutely protected acts of advocacy include those 'undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.'").

The alleged actions taken by McDonnell are within the scope of his prosecutorial duties and do not fall outside the judicial process.  *See Watkins v. Healy*, 986 F.3d 648, 661 (6th Cir. 2021); *Lamb v. Wallace*, No. 16-6253, 2017 U.S. App. LEXIS 16591, at *3–4 (6th Cir. July 13, 2017) (holding that a prosecutor refusing to provide written discovery to a defendant was well within the scope of prosecutorial duties and was therefore entitled to absolute immunity).  Even though Plaintiff alleges and argues that McDonnell took these actions with malicious intent, this does not overcome the bar of absolute immunity.  "Where absolute prosecutorial immunity applies, it is a defense against liability even for acts performed 'maliciously or corruptly,' *Dean v. Byerley*, 354 F.3d 540, 554 (6th Cir. 2004), in bad faith, *see Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998), or motivated by conflict of interest, bribery, or conspiracy, *see Eldridge v. Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003)."  *Alexander v. Harrison*, No. 21-1828, 2022 U.S. App. LEXIS 29854, at *8–9 (6th Cir. Oct. 24, 2022).

Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim because there is no issue of material fact that Plaintiff did not suffer a deprivation of liberty under the Fourth Amendment, the officer defendants did not make, influence, or participate in the decision to prosecute, and McDonnell is entitled to absolute immunity.  Accordingly, the malicious prosecution claim in Count 2 is **DISMISSED**.

### 2.    *Count 2 — Ohio Abuse of Process Claim*

The Court finds that Plaintiff has not sufficiently asserted an alternative or separate claim for abuse of process under Count 2.  Under Fed. R. Civ. P. 8, "[a] party may set out 2 or more

statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."  Fed. R. Civ. P. 8(d)(2).  Each claim, however, must contain: (i) a short and plain statement of the claim showing that the pleader is entitled to relief; and (ii) a demand for the relief sought.  Fed. R. Civ. P. 8(a).  To meet the minimum notice pleading requirements of Rule 8, the complaint must give Defendants fair notice of what Plaintiff's legal claims are and the factual grounds upon which they rest.  *Bassett v. Nat'l Collegiate Ath. Ass'n,* 528 F.3d 426, 437 (6th Cir. 2008).

To the extent that Plaintiff intended to assert a federal abuse of process claim, such a claim would fail because the Sixth Circuit does not recognize an abuse of process claim under § 1983. *Cratty v. City of Wyandotte*, No. 18-1710, 2019 U.S. App. LEXIS 12561, at *9 (6th Cir. Apr. 25, 2019) ("We have never recognized an abuse-of-process claim under § 1983."); *Rapp v. Dutcher*, 557 F. App'x 444, 448 (6th Cir. 2014) ("[A] federal abuse of process claim does not exist in the law of this circuit.").  However, Ohio law does recognize such a claim.

Under Ohio law, "the three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process."  *Yaklevich v. Kemp, Schaeffer & Rowe Co., LPA*, 626 N.E.2d 115, 118 (Ohio 1994).  Abuse of process is distinguishable from the tort of malicious prosecution because malicious prosecution does not provide a remedy when valid process is used to accomplish an improper or ulterior purpose.  *Id.*

The Court finds that Plaintiff has not sufficiently pled a claim for abuse of process under Ohio law.  Although Count 2 is partially labeled as a claim for "Abuse of Process in Ohio State Law," the underlying allegations do not support an Ohio abuse of process claim.  Plaintiff cites

28

§ 1983, § 1988, and the Fourth Amendment, but he does not cite *any* Ohio law or statute, let alone one related to abuse of process. (ECF No. 33, PageID #255–57 & n.6). The sole mention of abuse of process under Count 2 is a single allegation that Defendants instigated a criminal prosecution *without* probable cause and with malicious intent, which Plaintiff asserts is an "abuse of process." (ECF No. 33, ¶72). This, as well as the other allegations in Count 2, solely support a malicious prosecution claim. The pleadings in Count 2: (i) consistently allege that Defendants searched Plaintiff and his vehicle *without* probable cause; (ii) cite only federal law related to malicious prosecution claims; (iii) do not cite any Ohio law (abuse of process related or otherwise); and (iv) do not indicate any intention to alternatively or hypothetically plead an abuse of process claim. (ECF No. 33, PageID #255–75 & nn.4–6). Moreover, Plaintiff's briefs continually assert that there was a lack of probable cause to stop, search, and prosecute Plaintiff. (ECF No. 54, PageID #413–14, 419–22, 426, 429; ECF No. 57, PageID #594–95, 600).

Simply put, Plaintiff did not plead sufficient facts to sustain an abuse of process claim; nor did he give Defendants fair notice that he was asserting an alternative, distinct claim from his federal malicious prosecution claim. *See City of Pikeville v. Cebridge Acquisition, LLC*, No. 23-5770, 2024 U.S. App. LEXIS 10234, at *5–6 (6th Cir. Apr. 25, 2024) ("A complaint must 'plead claims and allegations with [sufficient] clarity' to give a defendant fair notice of the claims and the grounds upon which they rest." (quoting *Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021) (alteration in original)). Accordingly, Plaintiff's Abuse of Process claim is **DISMISSED.**[12]

---

[12] Even if Plaintiff had adequately asserted an abuse of process claim, it would still fail on its merits. Plaintiff has not adequately alleged an ulterior purpose for which the issuance of the traffic citation was designed. Plaintiff contends that the "prosecution was driven by malice, motivated by an intent to retaliate against Plaintiff for lodging complaints concerning the Defendant's constitutional violations." (ECF No. 54, PageID #416). Yet Plaintiff did not lodge any complaints against Defendants Aftim, Pitts, and Spisak for alleged civil rights violations until 10:02 AM on January 3, 2021, several hours after the traffic citation was issued. (*Id.* at PageID #532). The prosecution to which Plaintiff refers resulted from the traffic citation for failure to signal and consisted of Plaintiff attending traffic court to contest that citation. (*Id.* at PageID #416). The officer defendants could not have had an ulterior motive to retaliate against Plaintiff by initiating a prosecution based on complaints that had not been made when the traffic citation was issued.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment (ECF No. 51), **DENIES** Plaintiff's motion for summary judgment (ECF No. 54), and **DISMISSES** all claims against Defendants.

**IT IS SO ORDERED.**

Dated: March 24, 2025

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**

---

As for Defendant McDonnell, Plaintiff has presented no Rule 56 evidence that McDonnell continued the prosecution against Plaintiff as retaliation for the complaints filed against the officer defendants.  In fact, Plaintiff's briefs do not provide any argument that McDonnell prosecuted the case against Plaintiff based on ulterior motives.  Plaintiff's motion for summary judgment only argues that it was Defendant Aftim who "intentionally misused the judicial process" and engaged in abuse of process.  (ECF No. 54, PageID #416–17).